FILED
Oct 19, 2022
07:00 AM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| CHRISTOPHER CUTSINGER, | ) | Docket Nos. 2021-06-0007 |
| Employee, | ) | 2022-06-1079 |
| v. | ) | |
| BELLSOUTH | ) | State File Nos. 48212-2020 |
| TELECOMMUNICATIONS, LLC, | ) | 26837-2022 |
| Employer, | ) | |
| and | ) | |
| OLD REPUBLIC INSURANCE | ) | Judge Joshua Davis Baker |
| COMPANY, | ) | |
| Carrier. | ) | |

_____

## EXPEDITED HEARING ORDER
_____

In a September 28, 2022 expedited hearing of consolidated cases, Mr. Cutsinger requested authorization for a blood patch procedure from a July 2020 injury. He also sought temporary disability benefits for a February 2022 injury. Because he offered insufficient evidence to show he is likely to prevail at a final hearing on his requests for benefits, the Court denies them. However, the Court grants continuing, causally-related medical treatment of his work injuries.

### Claim History

While working for Bellsouth, Mr. Cutsinger alleged two work injuries to his shoulders, neck, and back occurring about nineteen months apart. The Court heard both cases together in the interest of judicial expediency.

Mr. Cutsinger first alleged an injury from lifting traffic cones in July 2020. Bellsouth accepted his claim, and after some initial treatment with a walk-in clinic, Mr. Cutsinger chose neurosurgeon Dr. Scott Parker from a panel of physicians.

After testing revealed only age-related changes, borderline carpal tunnel syndrome bilaterally, and mild cubital tunnel syndrome, Dr. Parker treated Mr. Cutsinger non-

1

surgically for left-shoulder and cervical strains. The cervical treatment included a cervical epidural steroid injection ["cesi"], which caused what a physiatrist later called "a very unusual cascade of symptoms." Mr. Cutsinger testified that he was offered an epidural blood patch to treat a headache caused by the injection, but he declined the treatment at that time.

His treatment also included several referrals by Dr. Parker, including one to Dr. James Anderson for a cognitive evaluation for symptoms of "significant stress and anxiety." But because those symptoms preexisted the work injury and seemed unrelated to lifting traffic cones, Bellsouth declined authorization. So, Mr. Cutsinger began treating with Dr. Anderson using private insurance.

Dr. Parker also referred Mr. Cutsinger to pain management and to another neurosurgeon. Both doctors found he suffered from symptoms unrelated to his work and released him to return to full-duty employment without restrictions.

After the conclusion of these referrals, Dr. Parker placed Mr. Cutsinger at maximum medical improvement without permanent impairment and released him to work without restrictions. He testified later that he had no outstanding treatment recommendations or referrals at that time, but Mr. Cutsinger could return to him as needed.

Instead of returning to work, roughly two months later, Mr. Cutsinger visited the walk-in clinic at which he had treated initially; this time, though, he did not have Bellsouth's authorization. The providers at the walk-in clinic made new referrals and treatment recommendations, and they imposed work restrictions.

Bellsouth declined to pay for treatment at the walk-in clinic, since Mr. Cutsinger had not first attempted to see Dr. Parker. It further declined to pay for temporary disability benefits or for any treatment with Dr. Anderson that was not authorized. At this point, Mr. Cutsinger requested his first expedited hearing for temporary disability and medical benefits. The Court accepted his request and heard the case.

On February 11, 2022, the Court entered an expedited hearing order granting Mr. Cutsinger continuing treatment with Dr. Parker. The Court, however, denied his request for payment for unauthorized medical treatment, including treatment with Dr. Anderson. The Court additionally denied temporary disability benefits, since three authorized physicians had placed him at maximum medical improvement for the work injury.

Exactly one week after the Court issued that order, Mr. Cutsinger alleged a new injury to his shoulders, neck, and back from "lifting a spool of cable off the ground and twisting [it] to store spool in [a] bucket truck." He testified that he requested medical treatment on February 22.

2

Meanwhile, Mr. Cutsinger was still treating under private insurance with Dr. Anderson. Because of residual complaints about the cervical epidural steroid injection received in September 2020, Dr. Anderson wrote on February 11, 2022, that Mr. Cutsinger "may need blood patch" because of "cesi [cervical epidural steroid injection] 9/25/20 but most symptoms better."

Two weeks after alleging his new injury, Mr. Cutsinger returned to Dr. Parker for treatment for his 2020 injury but reported "another injury at work which resulted in new neck and arm pain as well as low back and leg pain." Dr. Parker could not "fully comprehend the nature of his symptoms, but there does seem to be possibly a radicular component in the neck and in the legs."

Therefore, Dr. Parker imposed work restrictions for the new injury and ordered cervical, thoracic, and lumbar spine MRIs. Because of the restrictions, Bellsouth initiated temporary disability benefits.

When the MRIs yielded normal results and "no structural compression on the nerves which could be causing his symptoms," Dr. Parker recommended physical therapy and noted that Mr. Cutsinger "would like to see a shoulder specialist." He then released him from treatment to return as needed.

Bellsouth offered a panel of orthopedists for the new injury on April 13, 2022, and Mr. Cutsinger selected orthopedic surgeon Dr. Jonathan Cornelius. In his Rule 72 declaration, Mr. Cutsinger stated that, on April 18, 2022, he returned both the orthopedic panel and a "specialty group panel" choosing Concentra.

At Concentra, Mr. Cutsinger saw a nurse practitioner, who imposed restrictions for the new shoulder injury until Dr. Cornelius could evaluate him. Meanwhile, Bellsouth continued paying temporary disability benefits.

In an initial visit, Dr. Cornelius also assigned work restrictions and ordered a left-shoulder MRI, noting Mr. Cutsinger said "someone told him that his neck checks out fine and that his shoulder [is] the issue." Dr. Cornelius also added his first impression: "It is my opinion that the patient's injury is within the scope of employment."

After the MRI, Dr. Cornelius noted "partial tearing of articular surface of supraspinatus tendon of approximately 10%" in the left shoulder." He recommended an injection and physical therapy and also mentioned a "detailed discussion [with Mr. Cutsinger] of the etiology of the patient's condition."

However, at the next visit, Dr. Cornelius had changed his causation assessment after reading "4 years of other orthopedic notes with [the] patient having similar complaints."

3

After consideration of that history, Dr. Cornelius concluded, "I cannot say that his current symptoms are more likely than not due to the 02/18/2022 incident."

Still, Bellsouth is providing medical treatment with Dr. Cornelius, who saw Mr. Cutsinger as recently as September 16, when temporary disability benefits stopped, even though Mr. Cutsinger remains under restrictions.

**Findings of Fact and Conclusions of Law**

Mr. Cutsinger must present sufficient evidence that he is likely to prevail at a final hearing to receive benefits at this expedited hearing. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2021); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

Mr. Cutsinger's requests at this hearing remained largely the same as those at his earlier expedited hearing. The Court declines to revisit its decision from the last hearing without new evidence. As Mr. Cutsinger presented no new evidence concerning those requests—payment for unauthorized medical treatment and temporary disability benefits after his 2020 work injury—they remain denied.

However, Mr. Cutsinger also asked Bellsouth to pay for a blood patch procedure, which Dr. Anderson suggested earlier this year that he "may need" to treat complaints from the September 2020 cervical epidural steroid injection. He also sought reinstatement of temporary disability payments from September 16, 2022, for his 2022 injury.

Bellsouth argued that Mr. Cutsinger has received all the medical treatment and disability benefits to which he is entitled, and he has not presented expert medical proof to show he is likely to prevail at a final hearing on additional medical treatment or temporary disability benefits.

Turning to the blood patch procedure, the Worker's Compensation Law requires an employer to "furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." Tenn. Code Ann. § 50-6-204(a)(1)(A). Any treatment recommendation or referral by a panel physician is presumed medically necessary for treatment. *Id*. at § 50-6-204(a)(3)(H).

Here, Mr. Cutsinger is requesting a blood patch to treat complaints from an injection two years ago. As proof of its reasonableness and necessity, he offered a notation from Dr. Anderson that he "may need" a blood patch because of the 2020 injection, even though "most [of his] symptoms [are] better." However, this procedure was offered to Mr. Cutsinger by Dr. Parker, the authorized treating physician, shortly after the 2020 injection, but he declined to accept it. Now, more than two years later, Mr. Cutsinger claims the employer should have offered a panel to give the blood patch and asks that Dr. Anderson

4

be named as the authorized treating physician and perform the procedure. The Court denies this request.

Further, because so much time has passed, it is now unclear whether the blood patch is necessary because Dr. Parker has testified that he has no outstanding treatment recommendations for Mr. Cutsinger, including the blood patch, even though he saw him a little more than two weeks after Dr. Anderson recommended the procedure. Dr. Parker also recorded no lingering complaints or symptoms from the 2020 injection.

In summary, without a recommendation from Dr. Parker, or at least some evidence that Mr. Cutsinger's "very unusual cascade of symptoms" from the injection is still present and that the blood patch is reasonable and necessary treatment for those symptoms, the Court holds that Mr. Cutsinger is unlikely to prevail at a final hearing in obtaining authorization for the requested treatment.

Lastly, the Court considers Mr. Cutsinger's request for temporary disability benefits. To prevail at a final hearing, he must show: 1) he became disabled from working due to a compensable injury; 2) a causal connection exists between his injury and inability to work; and 3) the duration of his disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015). An injured worker is entitled to temporary partial disability benefits "where the treating physician has released the injured worker to return to work with restrictions prior to maximum recovery, and the employer . . . cannot return the employee to work within the restrictions." *Id*. at *8.

Although Mr. Cutsinger proved he is presently under restrictions that Bellsouth cannot accommodate, he did not present sufficient proof of a causal connection between his alleged work injury and those restrictions. While he relied on Dr. Cornelius's initial impression of a work-related injury in his left shoulder, the doctor's opinion changed after considering Mr. Cutsinger's preexisting condition. Without expert medical opinion connecting his disabled condition, including his need for restrictions, to his work accident, Mr. Cutsinger is unlikely to prevail on this issue at a final hearing. Therefore, the Court denies his request for temporary disability benefits.

However, Mr. Cutsinger "remains entitled to reasonable and necessary medical treatment causally related to [his] work injur[ies]." *Limberakis v. Pro Tech Sec., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *7 (Sept. 12, 2017).

**IT IS ORDERED** as follows:

1. The Court denies Mr. Cutsinger's requested relief at this time, but he may continue to receive reasonable and necessary medical care from Drs. Parker and Cornelius.

5

2. The Court sets these claims for **a status conference on January 9, 2023, at 9:00 a.m. Central Time.** The parties must call (615) 741-2113 or toll-free at (855) 874-0474 to participate. Failure to call might result in a determination of the issues without the party's participation.

**ENTERED October 19, 2022.**

_____

**Joshua Davis Baker, Judge**
**Court of Workers' Compensation Claims**

6

## APPENDIX

Exhibits

1) Medical records filed by the Employer on February 1, 2022
2) Medical records filed by the Employer on September 14, 2022
3) Rule 72 Declaration of Christopher Cutsinger for Docket No. 2021-06-0007
4) Rule 72 Declaration of Christopher Cutsinger for Docket No. 2022-06-1079
5) Choice of Physicians form dated April 13, 2022
6) Wage Statement
7) Dr. Parker's August 28, 2020 report
8) CESI Referral Order
9) CESI Operative Report
10) Concentra record dated April 22, 2022
11) Dr. Cornelius record dated April 27, 2022
12) Dr. Cornelius record dated May 5, 2022
13) Choice of Physician forms concerning Drs. Clendenin and Baker
14) Restrictions from Dr. Parker dated April 8, 2022
15) Restrictions from Dr. Parker dated March 2, 2022
16) Restrictions from Dr. Cornelius dated April 27, 2022
17) Restrictions from Dr. Cornelius dated May 25, 2022
18) Restrictions from Dr. Cornelius dated June 22, 2022
19) Restrictions from Dr. Cornelius dated July 20, 2022
20) Restrictions from Dr. Cornelius dated August 19, 2022
21) Restrictions from Dr. Cornelius dated September 16, 2022
22) Plan of Care from Dr. Anderson dated February 11, 2022
23) Unsigned Choice of Physician form
24) Questionnaire completed by Christopher Cutsinger


Technical Record: Docket No. 2021-06-0007

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Dispute Certification Notice Submission
5. Order Setting Expedited Hearing
6. Employer's Response to Employee's Request for Expedited Hearing
7. Employer's Exhibit List
8. Employee's Motion to Approve Cognitive Evaluation
9. Employer's Response to Motion to Approve Cognitive Evaluation
10. Employee's Motion to Approve CareNow visits
11. Employer's Response to Motion to Approve CareNow visits

12. Employee's Motion to Receive Dr. Parker's Questionnaire
13. Employer's Response to Motion to Receive Dr. Parker's Questionnaire
14. Notice of Filing Deposition Transcript of Christopher Cutsinger
15. Motion for Extension
16. Order Granting Extension
17. Notice of Filing of the Deposition Transcript of Dr. Scott Parker
18. Expedited Hearing Order entered February 11, 2022
19. Order Setting Status Conference entered March 31, 2022
20. Order Setting Status Conference entered May 24, 2022
21. Order Setting Status Conference entered June 14, 2022
22. Request for Expedited Hearing

Technical record: Docket No. 2021-06-1079

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Response to Employee's Request for A Decision on the Record
5. Employer's Response to Employee's Request for Expedited Hearing

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on October 19, 2022.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Christopher Cutsinger, Employee | | | X | gotsync@bellsouth.net |
| Kristen Stevenson, Employer's Attorney | | | X | kcstevenson@mijs.com ssshell@mijs.com |

_____
**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
Wc.courtclerk@tn.gov

8



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1.  Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2.  You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3.  You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4.  If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*